WINES *v.* CROSBY & CO.

1. CORPORATIONS — NEGLIGENCE — LIABILITY OF OFFICERS AND DIRECTORS—SALES—EXPLOSIVE COMPOUND.
    The president of a manufacturing corporation who actively participated in the manufacture and sale of a stove polish containing a large per cent. of naphtha, who knew the contents of the product and took no precautions to notify purchasers of its explosive character, is liable to a purchaser injured by such negligence.[1]

2. SAME—EVIDENCE—JOINT DEFENDANTS.
    The evidence, having a tendency to show that defendant corporation manufactured the compound, warranted a verdict against it and the president jointly.

3. SAME—NEW TRIAL.
    A new trial was properly denied by the trial court.

Error to Wayne; Rohnert, J. Submitted January 25, 1912. (Docket No. 33.) Decided March 12, 1912.

Case by Julia Wines against Crosby & Company, Six-Five-Four Manufacturing Company, and Charles F. Crosby for personal injuries. Judgment for plaintiff. On motion for a new trial, the verdict was set aside, and the motion granted as to the Six-Five-Four Manufacturing Company, and denied as to the other defendants, who bring error. Affirmed.

*Edwin Henderson* and *Alex J. Groesbeck*, for appellants.

*James H. Pound*, for appellee.

STONE, J. The plaintiff, a married woman, 28 years old at the time of the injury herein complained of, brought this action against Charles F. Crosby, Crosby & Co., and

[1] Personal liability of officers for torts or negligence of corporation, see note in 28 L. R. A. 421.

the 6–5–4 Manufacturing Company, the last two named defendants being corporations, to recover damages for a personal injury received by her on June 15, 1907, through a severe burning, occasioned by the alleged inflammable nature of a compound, or stove polish, known as "6–5–4, Self Shining Lusta," that she was using to polish a Peninsular coal range. It was the claim of the plaintiff that the article in question was manufactured and sold by the two corporations named as defendants, and that the business was managed and controlled by the defendant Charles F. Crosby, as an officer of said companies.

No question is raised in the case as to the sufficiency of the declaration, and it may be said that the alleged duties of the defendants are substantially as stated in the case of *Clement* v. *Crosby & Co.*, 148 Mich. 293 (111 N. W. 745, 10 L. R. A. [N. S.] 588, 12 Am. & Eng. Ann. Cas. 265), and 157 Mich. 643 (122 N. W. 263).

Upon the trial the testimony on behalf of the plaintiff tended to show that the composition known as "6–5–4" consisted of 75 per cent. or a little more of naphtha, and that it was a highly inflammable substance, and dangerous to be used by persons ignorant of its ingredients. The plaintiff testified that she purchased from a grocer the can of "6–5–4" a few days before the injury, that this was the first can she had ever used, and that she read the directions carefully. Among the directions were these words: "6–5–4 will burn when brought into contact with flame." Plaintiff further testified that when she started to polish the stove, about 11 o'clock a. m., she noticed that it was a trifle warm over the fire box; that she had been burning soft coal or coke, she did not remember which; that the back griddles and middle griddles were cold; that she put her hand on the griddle over the fire box, and that it did not burn her hand, but was warm; and that she applied the preparation with a cotton rag, which absorbed the liquid more or less. The directions were: "Use 5 cent flat bristle brush." The plaintiff further testified that she covered the entire top of the

stove, including the griddles over the fire box, and nothing happened; that the fire box was getting cooler; that she noticed a place near the stovepipe which did not suit her, and which she had skipped; that the stovepipe was in the middle of the stove, back of the two central griddles, and was not over the fire pot; that she had the can in her left hand and the rag in her right, and dipped the rag into the can to apply some of the preparation; that, as she was leaning over, some of the preparation dropped on the stove, on the griddle over the fire box, and immediately ignited, and she was very severely burned, resulting in the loss of the fingers upon one hand, and the use of the other hand. That the plaintiff has sustained severe and permanent injuries is not questioned.

We shall not quote the testimony *in extenso*, but it is sufficient to say that there was evidence tending to show that the defendant Crosby & Co. was the manufacturer of said " 6-5-4 " from 1905 down to the time of the injury complained of, and that during all of that time the defendant Charles F. Crosby had been the president of the company, and that the manufacture and sale of the article in question were under his immediate supervision, and that he knew the constituent parts of said compound and had personally made sales of the same while he was an officer of said corporation.

The defendants offered no testimony, but at the close of the plaintiff's case the defendant Charles F. Crosby requested the court to direct a verdict in his favor for the following reasons:

" (1) Because there is no proof in the case of any negligence on his part.

" (2) Because the compound in question was sold by Crosby & Co., a Michigan corporation, or by the 6-5-4 Manufacturing Co., and that said corporations are legal entities and responsible in law for their actions.

" (3) Because the stockholders of a corporation are not in any way responsible for the torts of the corporation.

" (4) Because the allegations of negligence contained

in the declaration as to the defendant Charles F. Crosby are not supported by any evidence in the case.

"(5) Because there is no evidence in the case that would warrant a jury in finding that Charles F. Crosby, having actual knowledge of the defects in the product of the Crosby & Co., wilfully and fraudulently placed the same on the market.

"(6) Because there is no evidence supporting the theory of the plaintiff to the effect that there was any spontaneous combustion or explosion which resulted in the damage to the plaintiff as claimed by the declaration.

"(7) Because there are no contractual relations between the defendant Charles F. Crosby and the plaintiff, or between Charles F. Crosby and any of the parties through whom said compound was sold."

The defendants Crosby & Co. and the 6-5-4 Manufacturing Company requested the direction of a verdict in their favor for the following reasons:

"(1) Because the allegations of negligence contained in the declaration are not supported by any evidence in the case.

"(2) Because there is no evidence in the case that the compound in question, through the use of which the plaintiff claims she was injured, was at any time sold or manufactured by the defendants.

"(3) Because there is no evidence in the case that would warrant the jury in finding that Crosby & Co., having actual knowledge of the defects in their products, wilfully or fraudulently placed the same on the market.

"(4) Because there is no evidence in the case that the composition known as '6-5-4' is *per se* dangerous to human life.

"(5) Because there was no evidence supporting the theory of the plaintiff to the effect that there was any spontaneous combustion or explosion which resulted in the damage to the plaintiff as claimed by the declaration.

"(6) Because all the proof in the case shows that the compound in question could not ignite except when brought in contact with a flame or that which amounted to a white heat, and that plaintiff testified that there was no such flame or heat present."

These requests or motions were refused, and the case was submitted to the jury under the charge of the court,

and the jury returned a verdict for the plaintiff against all of the defendants in the sum of $12,000. A motion for a new trial was made by the defendants, which was granted as to the defendant the 6–5–4 Manufacturing Company, and denied as to the defendants Crosby & Co. and Charles F. Crosby. The last-named defendants duly excepted to the reasons denying said motion, and they have brought the case here on writ of error.

There are 22 assignments of error, but counsel for appellants have only argued and called attention to the eleventh, twelfth, and twenty-second.

1. The eleventh assignment of error is to the effect that the court erred in refusing to direct a verdict for defendant Charles F. Crosby for the reasons · set forth in his motion to direct a verdict. Appellants' counsel state the rule to be that " an officer or director of a corporation is not liable for its torts, unless he has participated therein." They cite in support of this doctrine 21 Am. & Eng. Enc. Law (2d Ed.), p. 880, and cases there cited. We think that the rule of law stated is correct, but it is also true that the converse of the proposition is the law where there has been such participation.

Upon this branch of the case the trial court charged the jury as follows:

" You can only find against Mr. Crosby if it appears and you find it is a fact that he had knowledge of the dangerous character of this compound, and that he was actively promoting the manufacture and sale of this compound, as an officer with authority in the corporation. If you find that he was not actively promoting the manufacture and sale of this compound, knowing it to be dangerous, as an officer of the corporation, you cannot find against him."

We think that the learned circuit judge stated the rule correctly, and that he did not err in refusing to direct a verdict for said defendant. We are of opinion that there was sufficient evidence upon this point, as to this defendant, to carry the case to the jury. The following cases

are in point here: *Favorite* v. *Cottrill*, 62 Mo. App. 119. In this suit plaintiff sued the defendants for the destruction of his business as bill poster in the city of St. Louis. The defendant corporation was engaged in the same business, and its codefendant was its president and general manager. As to joint liability, the court said:

"The English rule, as declared by Lord Holt in the case of *Lane* v. *Cotton*, 12 Mod. 488, is that, for the *neglect* of the servant, third persons can have no remedy against him, but that the master alone is chargeable; but for a *misfeasance or actual tort* an action will lie against the servant because he is a wrongdoer. The general principle is that those who participate in the commission of a trespass by counseling, aiding, or abetting it, are equally liable with the person who actually committed it."

The doctrine of this case seems to be that, when a trespass or tort has been committed by a corporation, both the corporation and the agent under whose direction it acted are jointly liable therefor. *Peck* v. *Cooper*, 112 Ill. 192 (54 Am. Rep. 231). This action was brought to recover for damages claimed to have been sustained by plaintiff by being forcibly ejected from an omnibus controlled and operated by the defendant. The court said:

"The fact that appellant was the president of the corporation is no protection to him in the commission of an illegal act, and, where an officer of an incorporation performs an illegal act resulting in an injury to another, he is liable. Nor does it exonerate him from such liability because the corporation may also be liable."

*Cameron* v. *Commercial Co.*, 22 Mont. 312 (56 Pac. 358, 44 L. R. A. 508, 74 Am. St. Rep. 602). This case goes to the extent of holding that the directors of a corporation are personally liable for the death of one killed by an explosion of powder unlawfully kept in the corporation's warehouse, though they had no knowledge thereof, for, by exercising ordinary diligence as directors, they could have known that the warehouse contained an unlawful amount. This action was brought jointly against

the company and the directors. *Nunnelly* v. *Iron Co.*, 94 Tenn. 397 (29 S. W. 361, 28 L. R. A. 421); *Davenport* v. *Newton*, 71 Vt. 11 (42 Atl. 1087). In this case the doctrine is stated that, to make a director of a corporation personally liable for its torts, he must have done something through his acts also. The mere fact that he is one of the board of directors is not sufficient. Referring to *Nunnelly* v. *Iron Co.*, *supra*, the court said:

"The only question of which there can be any serious doubt in this class of cases is whether the officer or agent has participated in the wrong so that it may be justly regarded as his act; that if he has, his liability is indisputable."

See *Hewett* v. *Swift*, 3 Allen (Mass.), 420. In *Fanning* v. *Osborne*, 102 N. Y. 441 (7 N. E. 307), action was brought against D. M. Osborne & Co., a corporation, and David M. Osborne, its president. The court said:

"It appears that Mr. Osborne was president of the corporation, but it is not known that he advised or approved, either in his individual capacity or as trustee, of the acts of the corporation. The point that he was not shown to have personally intermeddled in the matter was specifically taken, and, upon the case as presented, we think the judgment against him individually is erroneous."

*Westervelt* v. *Demarest*, 46 N. J. Law, 37 (50 Am. Rep. 400). This case holds that the publication by savings bank directors that "directors and stockholders are personally responsible for its debts," if the statement is false, lays foundation for an action for deceit against the persons making the representations. *Montfort* v. *Hughes*, 3 E. D. Smith (N. Y.), 591; *Phelps* v. *Wait*, 30 N. Y. 78; *Suydam* v. *Moore*, 8 Barb. (N. Y.) 358; *Bell* v. *Josselyn*, 3 Gray (Mass.), 309 (63 Am. Dec. 741); *Greenberg* v. *Lumber Co.*, 90 Wis. 225 (63 N. W. 93, 28 L. R. A. 439, 48 Am. St. Rep. 911); 10 Cyc. pp. 824, 920, 933.

2. The twelfth assignment of error is to the point that the court erred in refusing to direct a verdict for defend-

ant Crosby & Co. for the reasons set forth in its motion to direct a verdict. The argument in support of this assignment of error is to the effect that the testimony absolutely failed to show that the compound sold to plaintiff as claimed was manufactured by the defendant Crosby & Co. We cannot agree with this contention, and we have already referred to the testimony tending to show such fact. We are of opinion that there was sufficient evidence upon this point to carry the case to the jury.

3. The twenty-second assignment of error is that the court erred in refusing to grant the defendants Crosby and Crosby & Co. a new trial for the reasons set forth in their motion for a new trial. The argument in support of this assignment of error is that the verdict against Charles F. Crosby was clearly against the weight of evidence. Counsel find no fault with the charge of the court upon that subject, but quote from it with approval, claiming, however, that there was no testimony to support a verdict as to said defendant. We do not agree with counsel in this claim, as already pointed out. The general doctrine as to liability of the manufacturers in cases of this nature is discussed in *Clement* v. *Crosby & Co., supra,* and we need not repeat it here.

We find no reversible error in the record, and the judgment of the circuit court is affirmed.

MOORE, C. J., and STEERE, McALVAY, BROOKE, BLAIR, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.