ROCKWELL v. HILLCREST COUNTRY CLUB, INC.

1. NEGLIGENCE—OCCUPIER OF LAND—INVITEES—LATENT DANGERS—
DUTY.

The occupier of land has a duty to warn invitees of latent
dangers of which he knows, and also to take reasonable pre-
cautions to protect the invitee from dangers which are fore-
seeable from the arrangement or use of the land.

2. NEGLIGENCE—OCCUPIER OF LAND—LATENT DANGERS—INVITEES—
DUTY—FAILURE TO WARN—DIRECTED VERDICT.

Refusal to grant defendant country club's motion for a directed
verdict was proper where defendant country club had knowl-
edge of a latent danger existing on its property, in that it
was reasonably foreseeable that during a golf tournament more
than 25 spectators would at the same time attempt to cross
a bridge on the course without notice of its safe capacity
of 25, where no sign was posted at the bridge advising the
spectators of the safe capacity of the bridge, and where no
marshal was present at the bridge to control the spectator
traffic over it, because the defendant country club failed to
warn its invitees of the bridge's maximum safe capacity.

3. NEGLIGENCE—CAUSATION—EVIDENCE.

Proofs which tend to establish defendant's duty and its breach
raise an issue for the jury provided there is also evidence of
negligent causation.

4. NEGLIGENCE—CAUSATION—PROOF.

Evidence which points to any one theory of negligent causation,
indicating a logical sequence of cause and effect, is a juridical

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 13]  38 Am Jur, Negligence § 96.
[3–8]  38 Am Jur, Negligence § 53 et seq.
[9]  19 Am Jur 2d, Corporations § 1341 et seq.
[10, 11]  47 Am Jur 2d, Jury § 195 et seq.
[12]  5 Am Jur 2d, Appeal and Error § 545.
[14]  5 Am Jur 2d, Appeal and Error § 836.

basis for a determination that defendant was negligent, notwithstanding the existence of other plausible theories with or without support in the evidence.

5. NEGLIGENCE—EVIDENCE—CAUSATION—PROOFS.

An inference that a bridge collapsed because of an overload rather than from unforeseeable failure of a hook as urged by defendant where plaintiffs' proofs show (1) that the bridge was constructed to hold 25 people safely, (2) that when the bridge collapsed there were 80 to 100 people on it, (3) that no sign was present warning those using the bridge of its safe capacity, (4) that no marshals or other supervisory personnel were present to oversee the proper use of the bridge, and (5) that the bridge collapsed dropping its occupants into the river below.

6. NEGLIGENCE — EVIDENCE — CAUSATION — EXPERT WITNESSES — EVIDENTIARY VALUE.

Defendant's theory of non-negligent causation is not equal in evidentiary value to plaintiff's theory of negligent causation, so as to make a determination of causation conjectural where defendant's expert witness's testimony was seriously impeached at trial and the jury was free to evaluate the credibility of the testimony of defendant's other witnesses in light of their being interested parties.

7. NEGLIGENCE—EVIDENCE—CAUSATION—EXPERT WITNESSES.

Causation in a negligence case may or may not be so esoteric a question that lay minds cannot form any intelligent judgment about it without the aid of opinion evidence from expert witnesses.

8. NEGLIGENCE—EVIDENCE—CAUSATION—EXPERT WITNESSES.

The lack of opinion evidence from an expert witness was not fatal to plaintiff's sustaining his burden of proof where the question presented was whether defendant was negligent where a bridge, which defendant knew could safely support 25 people, collapsed when there were 80 to 100 people on it during a golf tournament, no sign was present warning the spectators of the safe capacity, and no marshals were present to oversee the proper use of the bridge, for the question presented is not beyond the understanding of lay minds.

9. NEGLIGENCE—CORPORATE OFFICERS—PERSONAL LIABILITY—CORPORATE LIABILITY—DIRECTED VERDICT.

Refusal to direct a verdict for defendant corporation was not error where the court had dismissed the personal liability cause

of action against the corporation's president, for the fact that the corporation president was not personally at fault does not necessarily compel a like result in favor of the defendant corporation.

10. JURY—REOPENING VOIR DIRE—CONSENT.

Reopening of *voir dire* examination was not error as to defendant where the defendant requested the additional *voir dire* and all parties consented.

11. TRIALS—MISTRIAL—ATTORNEY'S REMARKS—DISCRETION.

Refusal to grant defendant's motion for a mistrial based on an allegedly prejudicial remark by plaintiff's attorney during the course of additional *voir dire* was not an abuse of discretion where the court found that the remark was justified in view of defense counsel's conduct and that the defendant was not prejudiced by the remark.

12. APPEAL AND ERROR—PRESERVING QUESTION.

The Court of Appeals will not review an alleged error where the record fails to disclose that the issue was properly preserved for appeal.

13. NEGLIGENCE—OCCUPIER OF LAND—JOINT CONTROL—SHARING OF REVENUES—DUTY.

The duty to supervise a golf course was jointly shared by the defendant owner corporation and the defendant golf tournament sponsor where they had joint control and possession of the golf course and shared revenues derived from the tournament.

14. NEGLIGENCE—PERSONAL INJURY—DAMAGES—APPEAL AND ERROR.

The Court of Appeals will not upset the amount of damages awarded by a jury where the plaintiff's injury is permanent and the amount of the verdict is within the range of testimony presented, for there is no absolute standard by which the Court of Appeals can measure the amount of damages in a personal injury case.

Appeal from Wayne, Charles Kaufman, J. Submitted Division 1 April 8, 1970, at Detroit. (Docket No. 6,343.) Decided July 27, 1970. Leave to appeal denied October 16, 1970. 384 Mich 767.

Complaint by James A. Rockwell and Ann Rockwell against Hillcrest Country Club, Inc., and Hillcrest Social Club, Inc., and Woodrow W. Woody for damages arising from the collapse of a foot-bridge. Judgment for plaintiffs against the corporate defendants. Defendant country club appeals. Affirmed.

*Lampert & Fried,* for plaintiff.

*Gussin, Weinstein & Kroll,* for Hillcrest Country Club, Inc.

Before: J. H. GILLIS, P. J., and V. J. BRENNAN and WEIPERT,* JJ.

J. H. GILLIS, P. J. On July 27, 1963, a suspension bridge covering the Clinton River and located on the Hillcrest Golf Course, Mt. Clemens, Michigan, collapsed, dropping its occupants into the river below. Immediately before the bridge gave way, there were approximately 80 to 100 golf enthusiasts on the bridge, together with a golf cart. Among them were plaintiffs James and Ann Rockwell; they were spectators watching a tournament being played on the Hillcrest course. Ann Rockwell fell 25 feet, struck the water, and sustained serious injuries. This suit followed.

Joined as defendants were the sponsors of the tournament—Hillcrest Social Club, a non-profit corporation; Hillcrest Country Club, corporate operator of the Hillcrest course; and Woodrow Woody, principal officer of Hillcrest Country Club, Inc. Plaintiffs' complaint alleged negligence, including defendants' failure to warn tournament participants and spectators of the maximum capacity of the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

bridge. At trial, it was plaintiffs' theory that over-loading caused the bridge to collapse and that defendants' negligence proximately caused plaintiffs' injuries. At the conclusion of trial, the jury was instructed to return a verdict of no cause as against the individual defendant, Woodrow Woody. The trial judge denied defendant Hillcrest Country Club's motion for directed verdict and the case against this defendant, as well as the case against Hillcrest Social Club, was submitted to the jury. A verdict was returned against both remaining defendants in the amount of $75,000 for Ann Rockwell and $2,500 for James Rockwell. Defendant Hillcrest Country Club's motion for judgment notwithstanding the verdict was denied and it appeals.

On appeal, 11 assignments of error are presented. We treat them collectively under the separate headings which follow.

# I

## Defendant's Motion for Directed Verdict

The question here is whether, "accord[ing] plaintiffs that full measure of favorable view to which they were entitled upon submission of defendant's said motion," *Schedlbauer* v. *Christ-Craft Corporation* (1968), 381 Mich 217, 221, plaintiffs' proofs established a *prima facie* case of actionable negligence, including sufficient evidence of negligent causation. The trial court answered in the affirmative. Our review of the record leads us to the same conclusion.

Upon favorable-to-plaintiff view of the evidence, the record clearly supports plaintiffs' pleaded contention that defendant Hillcrest Country Club was under a duty to warn, by some reasonably appropriate means, tournament participants and specta-

tors of the maximum capacity of the Clinton River bridge. The bridge itself was constructed in 1953. At that time, Woodrow Woody, defendant's president, was informed of the bridge's maximum capacity. He testified as follows:

"*Q.* [*By Mr. Fried, plaintiffs' counsel*]: Did you find out how many people could use the bridge?
"*A.* I did.
"*Q.* And what was that number?
"*A.* 25. As a safe factor. Not the capacity, but a safe factor.

\* \* \*

"*Q.* Mr. Woody, after you made that determination, after you found out that 25 people was the safe factor on that bridge, did you put a sign on the bridge?
"*A.* Yes, sir.
"*Q.* Did the sign say limited to 25 people?
"*A.* It said capacity 25 persons."

Woody's testimony established that the defendant corporation had knowledge of a latent danger existing on premises occupied by the Hillcrest Country Club. That more than 25 golf enthusiasts might— without notice of the safe capacity of the bridge— attempt to cross it during the tournament at the same time was a risk reasonably to be foreseen. Under these circumstances, the defendant corporation was obliged to warn its invitees, including plaintiffs, of the bridge's maximum capacity.

"[T]he obligation of reasonable care is a full one, applicable in all respects, and extending to everything that threatens the invitee with an unreasonable risk of harm. The occupier must not only use care not to injure the visitor by negligent acts, *and to warn him of latent dangers of which the occupier knows, but he must also * * * take reasonable precautions to protect the invitee from dangers*

*which are foreseeable from the arrangement or use.
The obligation extends to the original construction
of the premises, where it results in a dangerous con-
dition.*" Prosser on Torts (3d ed), § 61 pp 402, 403,
quoted with approval in *Powers* v. *Huizing* (1968),
9 Mich App 437, 441, 442. (Emphasis supplied.)

Clearly preponderant proof also established that
no forewarning was given to those crossing the
bridge on the date of the tournament. Again we
quote Woody's testimony:

"*Q.* On July 27th, the date of this incident that's
involved in this lawsuit, was there a sign on this
bridge?
"*A.* The day the incident happened?
"*Q.* Yes.
"*A.* There was not a sign there. I looked at it
and there was not a sign there, to my great disap-
pointment.

* * *

"*Q.* Mr. Woody, on July 27, 1963, did you have
any—by 'you' I mean the Hillcrest Country Club—
did you have anybody at that bridge controlling
traffic on that bridge?
"*A.* If you are asking me personally as a presi-
dent of Hillcrest Country Club—
"*Q.* First let me ask you personally, did you have
anybody. Did you on July 27, 1963, direct anybody
to go down and control traffic on that bridge?
"*A.* I did not.
"*Q.* Did you as president of Hillcrest Country
Club, Incorporated, on July 27, 1963, direct anybody
to control traffic on that bridge?
"*A.* I did not."

Defendant makes no answer to plaintiffs' proofs
establishing duty and its breach. That proof made
an issue for the jury provided there is evidence in
the record likewise establishing, upon favorable

view, negligent causation. See *Schedlbauer* v. *Chris-Craft Corporation, supra,* at p 223.

Defendant invokes the rule of conjectural cause, see *Kaminski* v. *Grand Trunk W. R. Co.* (1956), 347 Mich 417, 419, and suggests that plaintiffs' case must fail for want of proof of negligent causation. We are told in its brief:

"There can be no question that the court allowed this case to go to the jury without the benefit of the jury knowing from plaintiffs-appellees' side as to what the cause of the accident was."

Defendant contends that the only theory consistent with the testimony presented as to why the bridge collapsed is that one of the eight hooks which supported the bridge had a hidden defect; that only this one hook broke under the pressure of the crowd; and that, but for the defect, the accident would not have occurred. At trial, the expert testimony of Dr. Clark Corey, a metallurgical engineer, was offered by defendant in support of its theory regarding causation. Dr. Corey testified that of the eight hooks he examined only one had broken; that microscopic study of the grain structure and steel constituents of this hook indicated a fracture; and that: "I believe I said that we could assume in the absence of fracture * * * it would not have broken under the load that was on it when it did break."

Contrary to the assertion made in defendant's brief and quoted above, the record undermines defendant's view that the jury was left uninformed from plaintiffs' side as to what caused the accident. In his closing argument to the jury, plaintiffs' counsel succinctly stated plaintiffs' theory as follows: "There is no doubt that what made that bridge collapse was that there were more than 25 people on that bridge on the date that this accident happened."

Throughout trial, plaintiffs had consistently maintained that overloading of the bridge was the cause in fact of its collapse.

In *Kaminski* v. *Grand Trunk W. R. Co., supra,* Mr. Justice BLACK enunciated the standards by which we are to test defendant's contention that the rule of conjectural cause precludes recovery. Quoting *City of Bessemer* v. *Clowdus* (1954), 261 Ala 388, 394 (74 So 2d 259, 263), Justice BLACK characterized the dispositive inquiry as follows:

" '[I]f there is evidence which points to any 1 theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence.' " 347 Mich at p 422.

In other words:

" '*If, however, plaintiff has proven sufficient facts to justify a verdict upon one theory, the fact that there may be one or more other seemingly rational explanations of the episode in no manner precludes a recovery or invalidates the verdict.* These are mere matters of argument to be presented to the jury.' " Id., quoting *Juchert* v. *California Water Service Co.* (1940), 16 Cal 2d 500 (106 P2d 886, 890). (Emphasis supplied.)

Measured against those standards, we are satisfied that plaintiffs' proofs in this case were sufficient to justify a verdict upon the theory that the bridge collapsed because of overload.

Turning to the record: Upon favorable view plaintiffs' proofs show (1) that the bridge was constructed to hold 25 people safely; (2) when it collapsed there were 80 to 100 people on the bridge; (3) no sign was present warning those using the bridge of its safe capacity; (4) no marshals or other

supervisory personnel were present to oversee proper use of the bridge; and (5) that the bridge collapsed, dropping its occupants into the river below. From these facts, we think it permissible to infer negligent causation. Reasonable men might draw a fair inference—as theorized by plaintiffs' counsel—that overload caused the bridge to collapse; and that, but for defendant's failure to forewarn those using the bridge of its safe capacity, the bridge would not have collapsed, injuring plaintiffs.

Nor are we persuaded that defendant's theory of non-negligent causation is equal in evidentiary value to that relied upon by plaintiffs at trial, and that the cause of plaintiffs' injuries is therefore conjectural. The trouble with defendant's theory is that its principal exponent, Dr. Corey, was seriously impeached at trial. Although it is true, as noted in defendant's brief, that Dr. Corey testified that in the absence of the fractured hook the bridge "would not have broken *under the load that was on it when it did break*", (emphasis supplied), reasonable men might legitimately question the basis of this conclusion in light of Dr. Corey's testimony on cross-examination. On cross-examination, he was asked by plaintiffs' counsel: "Do you know what the load on the bridge was on that day of July 1963? Dr. Corey responded: "No". Moreover, the jury had the right to disbelieve defendant's theory of causation, see *Gadde* v. *Michigan Consolidated Gas Company* (1966), 377 Mich 117; it was not bound to accept defendant's expert testimony. *Powers* v. *Huizing, supra,* at p 442. Likewise, although Woodrow Woody explained at trial that 25 represented the maximum number of people who could use the bridge without jostling each other, or crowding the bridge, the jury was not bound to accept Woody's explanation at face value. *Baumgartner* v. *Ham* (1965),

374 Mich 169. Rather, the trier could properly disregard Woody's interested testimony and find that 25 represented the number of individuals who could safely occupy the bridge without the danger of collapse.

Neither are we of the view that the absence of expert testimony on plaintiffs' side of the case is fatal, as argued by defendant. In any given case the question of causal relation may—or may not— be "so esoteric that lay minds cannot form any intelligent judgment about it without expert aid, opinion evidence from qualified witnesses." 2 Harper & James, Torts, § 20.2, pp 1116-1117; see also, Prosser on Torts (3d ed), § 41, p 245. Plaintiffs' case here falls within the hyphenated category. Whether, on the physical facts presented, the bridge collapsed because of overload is not a question beyond the understanding of ordinary lay minds. *Cf. Pierce v. C. H. Bidwell Thresher Co.* (1908), 153 Mich 323, 328. An elementary law of physics dictates that if more weight is placed on an object than it will hold, collapse will occur. We conclude that plaintiffs could sustain their burden of proof without production of expert testimony. *Cf. Powers v. Huizing, supra,* at pp 440, 442.

The trial judge carefully considered and denied defendant's motion. He said:

"Now based upon this information which was given to Mr. Woody as president of the Hillcrest Country Club * * * and taking all the circumstances I can into consideration, I think that a jury could find that where the corporation, Hillcrest Country Club, is advised that the bridge will hold 25 as a safe factor, there must of necessity be some amount that the bridge will not hold over 25. It appears to me that is a factual matter when you get to a figure of 80 to 100 which is more than 3 and

up to 4 times the amount that would be a safe factor. It would appear to me that as a matter of fact a jury could find that there was negligence in the Hillcrest Country Club in failing to provide some facilities to restrict the bridge to the 25 or maybe some small amount over that which the safe factor would allow.

"The testimony is that the bridge collapsed * * * it did collapse. The testimony in the light most favorable to the plaintiff is that there were some 80 to 100 people on the bridge.

* * *

"I don't think I have to go into the question of proximate cause because if the jury should find there was negligence in permitting more to go on the bridge and not providing for a denial of more than a certain amount on the bridge and it did collapse because of this, the jury could well find that this failure was the proximate cause of the bridge collapsing."

Having applied the teachings of Mr. Justice BLACK in *Kaminski,* we conclude that the trial judge was right in denying defendant's motion for directed verdict.

Finally, defendant corporation contends that the trial court should have directed a verdict in its favor, since its president was held free from liability as a matter of law. We find nothing inconsistent in the rulings made below. The trial judge concluded that Woody had not personally participated in the alleged tort and ruled accordingly. See *Wines* v. *Crosby & Co.* (1912), 169 Mich 210, 214; compare, *Allen* v. *Morris Building Company* (1960), 360 Mich 214, 218; *Warren Tool Company* v. *Stephenson* (1968), 11 Mich App 274, 300. That Woody was held free from fault does not, however, necessarily compel a like result in favor of defendant corporation. See 7 MLP, Corporations, § 176, p 209.

II

Alleged Trial Error

Defendant contends that the trial court erred when it reopened the *voir dire* examination of the jury. We find no error. The defendant corporation itself requested the additional *voir dire*. All parties consented. See *Ayres* v. *Hubbard* (1891), 88 Mich 155, 157. The trial judge's efforts to secure trial by an impartial jury were commendable rather than erroneous. *Quay* v. *Duluth, S. S. & A. R. Co.* (1908), 153 Mich 567; see also, *People* v. *Grabowski* (1968), 12 Mich App 672, 674–676.

During the additional *voir dire,* defendant requested a mistrial on the basis of an allegedly prejudicial remark made by plaintiffs' counsel. The trial court denied defendant's motion, ruling that the remark was justified in light of defense counsel's conduct. Moreover, the court found that defendant was not prejudiced by the remark. We conclude the trial judge was properly within his discretion in denying the motion for mistrial. *Bishop* v. *Wolinski* (1969), 16 Mich App 753.

Defendant next asserts that the trial court erred when it ruled that defense counsel could not argue in closing that plaintiffs had failed to call one Constancio Miranda, an expert witness whom plaintiffs had hired to aid in the preparation of plaintiffs' case. Plaintiffs assert that no such ruling was made. We are unable to determine whether, in fact, any ruling restricting defendant's final argument, as alleged, was made by the trial judge. The relevant events occurred in chambers; no stenographic record was made. Nowhere in the record does it appear that defendant has properly preserved this issue for appellate review. *Cf. Norris* v. *Detroit U. R. Co.* (1916), 193 Mich 578, 584. No objection was

entered on the record to the allegedly unfavorable ruling. Nor did defendant request an instruction permitting the jury to infer that Dr. Miranda, if called, would have given testimony unfavorable to plaintiffs. In the absence of an objection preserved on the record, we decline to consider the propriety of the alleged ruling. Plaintiffs argue that final argument urging the jury to draw such an inference would infringe plaintiffs' attorney-client privilege. We express no opinion on this question, as the issue is not properly before us.

## III

### Alleged Instructional Error

At trial, it was defendant's theory, embodied in its requested instruction no. 10, that it could not be held liable since its president, Woodrow Woody, has secured assurances from the Hillcrest Social Club that the social club would post marshals at the bridge to prevent overloading. The trial judge refused to give defendant's instruction no. 10, and defendant assigns his refusal as error.

In denying defendant's motion for directed verdict at the conclusion of trial, the trial judge considered defendant's theory and rejected it, reasoning as follows:

"Defendant Hillcrest Country Club contends in this motion that the undisputed evidence indicates that defendant Hillcrest Country Club had leased the premises for this tournament to Hillcrest Social Club. In answer to this one element of it, this court would indicate that I would find as a matter of law that there could be no delegation of duty of supervising the premises *under these circumstances where unquestionably, unequivocally the evidence indicated that Hillcrest Country Club * * * had the*

*care, custody, control and duty to maintain the premises safely."* (Emphasis supplied.)

The record indicates that during the tournament both the defendant corporation and the Hillcrest Social Club had joint control and possession of the golf course. Revenues derived from the tournament were shared. What was said in *Siegel* v. *Detroit City Ice & Fuel Company* (1949), 324 Mich 205, 214, applies here:

"This is not a case where either the tenant or the landlord had exclusive control and possession of common passageways. The facts here show that the defendants each had control and possession. Liability to third persons lawfully on the premises for injuries due to the defective condition of the premises depends on control and possession of the premises, see *Nezworski* v. *Mazanec* [1942], 301 Mich 43; thus both defendants are liable to plaintiff."

*Accord, Bradley* v. *Burdick Hotel Co.* (1943), 306 Mich 600; *McCord* v. *United States Gypsum Company* (1966), 5 Mich App 126. On the record presented, the trial judge properly refused to give defendant's requested instruction no. 10.

Four other alleged instructional errors are raised. We have carefully reviewed the charge and, considered in its entirety, it fairly stated the law. We find no error.

IV

Alleged Excessiveness of the Verdict

We are satisfied that the verdicts for James and Ann Rockwell were fairly within the range of testimony presented. As a result of her fall, Ann Rockwell suffered a broken back. Evidence was presented indicating that her injuries were permanent. Before the accident, Ann had worked as a computer

operator. She testified that she was no longer able to secure work requiring her to sit because of pain in her back. Her life expectancy was approximately 30 years.

There is no absolute standard by which we can measure the amount of damages in a personal injury case. The verdicts here do not shock us. We decline to upset the judgment of the triers of fact.

Affirmed. Costs to appellees.

All concurred.