## ZWERGEL *v.* ZWERGEL.

1. DEEDS—DURESS.

Where a woman of mature business judgment, in response to her brother's claim that she had received more than her share of their parents' property, caused a store building, title to which was in her name, to be conveyed to herself and brother jointly, with right of survivorship, her claim that said conveyance was procured by duress,

As to contracts procured by threats of prosecution of relative as duress, see notes 26 L. R. A. 48; 37 L. R. A. (N. S.) 539; L. R. A. 1915D, 1118.

On liability of cotenants to account for use and occupation or rents and profits, see notes in 28 L. R. A. 829; 29 L. R. A. (N. S.) 224; L. R. A. 1918B, 606.

*held,* not established, even if the brother's claim was unjust.

2. JOINT TENANCY—LIABILITY OF COTENANT FOR RENT.
   A cotenant occupying the premises with the consent of the other cotenant is not liable for rent therefor.

3. SAME—RENTS RECEIVED—COTENANT MUST ACCOUNT.
   Under 3 Comp. Laws 1915, § 11816, a cotenant must account for the rent received from the portion of the premises not occupied by her.

4. SAME—ACCOUNTING—COTENANT ALLOWED DISBURSEMENTS.
   Where plaintiff, in a suit for an accounting by his cotenant for rents received, consented on the trial that defendant be allowed certain disbursements, on reversal of the decree for defendant said disbursements will be allowed.

Appeal from Washtenaw; Sample (George W.), J. Submitted June 6, 1923. (Docket No. 56.) Decided July 19, 1923.

Bill by George W. Zwergel against Mary C. Zwergel for an accounting. Defendant filed a cross-bill to set aside certain conveyances on the ground of duress. From a decree for defendant, plaintiff appeals. Reversed in part.

*Jones & Stuhrberg* and *Henry A. Balser,* for plaintiff.

*John P. Kirk,* for defendant.

FELLOWS, J. J. George Zwergel and Barbara, his wife, lived in the city of Ypsilanti for a great many years. They had three children, plaintiff and defendant and another daughter, Eva. In 1896 Mr. Zwergel started in business in a small way. His business grew and was successful. At the time of Mr. Zwergel's death it consisted of a grocery store in one part of the building owned by him and a book and students' supplies store in another part of the build-

ing.  Plaintiff married but remained with his father in the store at Ypsilanti a few years.  In 1908 the father arranged to start plaintiff in business at Mt. Pleasant and furnished the money for the building and enterprise, and plaintiff and his family moved to Mt. Pleasant and remained there until 1920.  The daughter Eva married a man named Alexander.  She died leaving a daughter Helen, a child of tender years, who came to live with her grandparents after her mother's death.  Mary remained at home with her parents and with the exception of a few months worked in her father's store from its beginning.  As Mr. Zwergel prospered he acquired additional property, the title to real estate acquired being taken in the names of himself and his wife, Barbara.  At the time of his death the real estate so held consisted of the Ypsilanti store property, the homestead at Ypsilanti, a valuable vacant lot at Ypsilanti, and the store property at Mt. Pleasant.

On February 15, 1912, Mr. Zwergel made his will, giving to his wife, Barbara, all of his property in case she survived him; in case she did not survive him, all of the Ypsilanti property was given to defendant subject to a bequest to the granddaughter, Helen, and the Mt. Pleasant property was given to plaintiff.  On the same day Barbara made a will disposing of the property in case she survived her husband in the same manner as provided in his will.  Mr. Zwergel died March 11, 1915, and his will was duly admitted to probate, defendant being named executrix.  The personal estate was valued at $13,014.  Defendant was allowed for money loaned her father and for back salary $10,592.07.  This with other claims and expenses exhausted the estate.  We are satisfied that plaintiff knew of the probate proceedings including the allowance of defendant's claim and made no ob-

jection thereto.   For a number of years before her father's death defendant had the entire management of the store, due to his physical incapacity, and she has managed it since.   Under her management it has been very successful.

Barbara died April 5, 1918.   Before she died she conveyed the business block in Mt. Pleasant to plaintiff and, while the direct evidence is not entirely clear, we are satisfied from all the attendant circumstances she gave him the stock of goods at Mt. Pleasant at the same time.   She conveyed to Mary the homestead at Ypsilanti and the Ypsilanti store building and we are satisfied that at the same time if she had not done so before she transferred to Mary the stock in the Ypsilanti store.   This is evidenced by writings signed by Barbara and by statements made by her to her intimate friends and is borne out by the surrounding circumstances and the fact that Mary was entitled to it in payment of her claim.   Barbara also conveyed to plaintiff and defendant jointly the vacant lot in Ypsilanti.   Before these transfers Barbara had paid a mortgage on the Mt. Pleasant store of $1,500.   It is to be inferred that the money used for this purpose came from the store conducted by defendant.   Afterwards plaintiff sold the Mt. Pleasant property for $12,500, paid debts there of $3,500 and moved to Toledo.

Shortly after the death of Barbara plaintiff commenced to find fault with the disposition of the property.   Frequent conferences were had between plaintiff and defendant and there is no doubt on this record but that plaintiff forcefully pressed his claim and vigorously threatened litigation.   Finally on May 31, 1918, defendant conveyed the store building in Ypsilanti to one Ray who on the same day reconveyed it to plaintiff and defendant jointly with right of survivorship.   But defendant with the assent of

plaintiff continued to occupy the building and continued to there conduct the business.   In the summer of 1921, plaintiff insisted that he was entitled to one-half the stock and an accounting of the profits of the business and the rent of the Ypsilanti property.   This being refused he filed this bill in which he claims that he is entitled to one-half of the stock by reason of a family understanding and agreement that after the death of the parents the plaintiff and defendant should continue the business.   Defendant answered denying all the equities of plaintiff and by way of cross-bill asked that the conveyances by which the title to the store building was put in the names of plaintiff and defendant be set aside on the grounds of duress.   The trial judge dismissed plaintiff's bill and granted the relief prayed for in the cross-bill.

The plaintiff has utterly failed to show that he had any legal right to any interest in the stock or any semblance of legal right at the time this suit was instituted.   If he ever had any semblance of a claim it was settled by the settlement of May 31, 1918. By that settlement he is bound, and we proceed to consider the other features of the case.

We can not agree with the trial judge that the conveyance of the store building was procured by duress. Accepting what is said in the case cited by defendant (*Hackley* v. *Headley*, 45 Mich. 569) as the proper measure in considering the question of duress, the defendant has failed to make a case of duress.   In that case it was said:

"Duress exists when one by the unlawful act of another is induced to make a contract or perform some act under circumstances which deprive him of the exercise of free will."

Measured by this standard defendant has failed to establish such a state of facts as would justify the cancellation of the conveyances of May 31, 1918, on

this ground. Doubtless plaintiff was pressing with vigor an unjust claim, and the record discloses that defendant had much more consideration for her brother than he had for her. But she was a business woman of more than 20 years' experience. Whether plaintiff's claim was just or not would only be finally determined after bitter family litigation. For several weeks the matter was considered between brother and sister and finally the settlement of May 31, 1918, was made. In view of what has since occurred it would have been better had defendant then litigated with her brother and then left to the courts to decide their respective rights. But we hold that plaintiff was bound by such settlement and likewise is defendant bound.

This leaves only to be considered the question of rent. As we have stated, defendant occupied the store with the assent of the plaintiff. It has uniformly been held that where one cotenant occupies the premises with the assent of the other cotenant, he is not liable to such other cotenant for rent. *Everts* v. *Beach*, 31 Mich. 136 (18 Am. Rep. 169) ; *Wilmarth* v. *Palmer*, 34 Mich. 347; *Owings* v. *Owings*, 150 Mich. 609. So that defendant can not be held for rent of the store occupied by her. But the testimony discloses that there are apartments over the store which are rented and that defendant has received the rent. Sec. 11816, 3 Comp. Laws 1915, provides:

"One joint tenant or tenant in common, and his executors or administrators, may maintain an action for money had and received, against his cotenant, for receiving more than his just proportion of the rents or profits of the estate owned by them as joint tenants or tenants in common."

Under this statute defendant must account for the rent received from the portion of the premises not occupied by her; but it appears from the record that

defendant has cared for the grandchild, Helen, now a girl of 14, for many years and plaintiff in his testimony consented that one or two years' rent should be applied on Helen's support and schooling.    Taking him at his word the rent of the apartments for the two years following May 31, 1918, may be retained by defendant to reimburse her in part for what she has expended for Helen.    Defendant on an accounting should be allowed her disbursements.    *Fenton* v. *Miller*, 116 Mich. 45 (72 Am. St. Rep. 502).

A decree will be here settled in accordance with this opinion.    If upon such settlement of the decree the parties shall agree upon the accounting it will be stated in the decree; if not, the case will be remanded for the accounting.    Neither party will recover costs. Should an accounting, however, become necessary the chancellor will determine the question of costs of such accounting.

WIEST, C. J., and MCDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.