BAUER v. SAGINAW COUNTY AGRICULTURAL SOCIETY.

1. THEATERS AND SHOWS—DUTY TO MAINTAIN SAFE PLACE FOR VISITORS.

A party who conducts a fair to which the public is invited has the duty to maintain a reasonably safe place for the visitors and what will be reasonable care will be a degree of care proportioned to the danger incurred and to the number of persons who will be subjected to that danger.

2. SAME—FAIR—FIREARMS.

A party conducting a fair upon which firearms are used owes a high degree of care to patrons of the fair to keep the area where the firearms are used reasonably safe.

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 2 Am Jur, Agriculture § 56; 52 Am Jur, Theaters, Shows, Exhibitions, and Public Resorts §§ 47–49, 64.

[1–3] Duty and liability of owner or keeper of place of amusement respecting injuries to patrons. 22 ALR 610; 29 ALR 29; 38 ALR 357; 44 ALR 203; 53 ALR 855; 61 ALR 1289; 98 ALR 557.

[4] 56 Am Jur, Weapons and Firearms §§ 22, 23.

[5] 52 Am Jur, Theaters, Shows, Exhibitions, and Public Resorts §§ 60, 64.

[6] 2 Am Jur, Agriculture § 56; 52 Am Jur, Theaters, Shows, Exhibitions, and Public Resorts § 64; 56 Am Jur, Weapons and Firearms § 28.

Responsibility of agricultural society for tort. 52 ALR 1400.

Liability for injury by firearms at rifle range, shooting gallery, military exercise, et cetera; use of firearms in such cases as nuisance. 140 ALR 415.

3. SAME—CONTINUOUS INSPECTION—NEGLIGENCE.

The proprietor of a fair to which the public is invited is under continuing duty of inspection, to the end of seeing that it is reasonably safe for the protection of those whom he invites to come into it and if he neglects his duty in such respect, so that it becomes unsafe, the question of his knowledge or ignorance of the defect which renders it unsafe is immaterial.

4. NEGLIGENCE—FIREARMS—HIGH DEGREE OF CARE REQUIRED.

A very high degree of care is required of all persons using firearms in the immediate vicinity of others, no matter how lawful or even necessary such use may be and where injury to another ensues by the use of firearms the defendant must show that the injury was inevitable and utterly without fault on the part of the alleged wrongdoer.

5. SAME—POSSESSOR OF LAND—CONCESSIONAIRE.

A possessor of land who in the course of his business holds it open to members of the public, is subject to liability for bodily harm caused to them, on a part thereof leased to a concessionaire, by his failure to exercise reasonable care to secure the use of reasonably safe equipment and methods by an independent contractor or concessionaire employed or permitted to carry on upon the land an activity in furtherance of the possessor's business use thereof.

6. THEATERS AND SHOWS—SHOOTING GALLERY—INSPECTION—NEGLIGENCE—INJURY TO MINOR.

Defendant agricultural society, owner of fairgrounds to which public was invited, including plaintiff, a 4-1/2-year-old boy, had continuous duty of inspection as to shooting gallery, a concessionaire leased on the premises and where it failed to prescribe any rules for or to exercise any sort of supervision over the operation of the shooting gallery its negligence in such respect, which was a proximate cause of injury to plaintiff invitee, rendered it liable therefor, it appearing that a rifle, being cleaned by a 15-year-old boy in charge of the gallery while closed to the public, was discharged in such a way as to escape the bullet-proof sides of the structure.

7. NEGLIGENCE—COURTS.

Courts will find a duty where, in general, reasonable men would recognize it and agree that it exists.

Appeal from Saginaw; Huff (Eugene Snow), J. Submitted January 15, 1957. (Docket Nos. 57, 58,

Calendar Nos. 47,062, 47,063.)    Decided September 4, 1957.

Case by Leslie Bauer, by Florence Bauer, next friend, against Saginaw County Agricultural Society, a Michigan corporation, for injuries received when struck by stray bullet from shooting gallery maintained on defendant's premises during fair time. Action by Roland Bauer, father of the boy, against same defendant for hospital and medical and incidental expenses and loss of services. Cases consolidated for trial and appeal. Judgments for plaintiffs. Defendant appeals. Affirmed.

*James A. White, Jr.,* and *Oscar W. Baker,* for plaintiffs.

*Stanton, MacKenzie, Cartwright & Walker (H. Monroe Stanton,* of counsel), for defendant.

Edwards, J. On Farmers' Day, September 15, 1949, a farmer's wife and her 4–1/2-year-old son went to the fair. She paid admission and with her son was walking down the midway when suddenly there was the crack of a rifle. The boy fell, shot through the abdomen by a 22-caliber bullet. Testimony at trial of this case indicated that the shot came from a shooting gallery on the midway (closed to the public at the time) wherein a 15-year-old employee was cleaning a rifle.

With the astonishing resilience of the young, the boy came through extensive surgical repair of his punctured intestines and survived, and recovered with a bullet lodged in the base of his spine. These 2 suits are brought by the mother on his behalf for his injuries and pain and suffering, and by the father for the hospital and medical and incidental expenses. Failing to serve the rifle range concessionaire or the

15-year-old boy, they seek to hold the defendant sponsors of the fair for damages. The trial judge, hearing the case without a jury, entered judgments of $5,000 and $1,153.45 respectively in the 2 cases, and the defendant Saginaw County Agricultural Society appeals.

The detailed facts are set forth with admirable conciseness by the parties in a stipulated statement of facts, most of which we quote verbatim:

"For many years, defendant society had conducted on its own property in Saginaw, Michigan, a well attended and advertised fair for 1 week in the year. September 15, 1949, was advertised as Farmers' Day, and plaintiff, Florence Bauer, a farmer's wife, was attracted. She attended with her 4-1/2-year-old son, Leslie, and her sister, Norma Bartotti. On September 15, 1949, as invitees, they paid to enter defendant grounds.

"The minor was walking south with his mother down the midway, which was a paved thoroughfare for patrons of the fair. It extended north and south through the grounds with games and other amusement devices lining the east and west sides. At the south end on the west side of the midway was a shooting gallery. This shooting gallery was about 14 feet wide and 24 feet deep with a steel back and sides. At time of the injury, a canvas curtain hung from the top of the booth to the counter preventing patrons on the midway from seeing into the gallery.

"About 10:30 a.m., as the Bauer group reached a point 126 feet north of the front of the booth, a shot rang out. Leslie Bauer collapsed with a 22-caliber bullet embedded in his body.

"Unknown to plaintiffs at this time a 15-year-old boy, Harry Lee Nobles, was inside the gallery cleaning the 22-caliber rifles used in operation of the shooting gallery. Nobles was in charge of the gallery at the time, and as he was handling 1 of the guns facing out toward the midway, he stated the gun he was cleaning accidentally discharged. This

gun was partially disassembled and Nobles failed to remove the bullets from it. The bullet from the gun went through the canvas curtain and struck the Bauer boy.

"The shooting gallery space had been leased by Jack Smith, a concessionaire, from defendant as he had done in other years. The agreement resulting in his presence at the 1949 fair is evidenced by exhibit 17. The balance of the rental fee was collected by defendant on the 2d day of the fair. Harry Lee Nobles was an employee of Jack Smith who hired him to work in the shooting gallery. There were chains for the guns so operated so that operators could not turn the guns around, but they were not chained at the time of the injury.

Mr. Bennett Sawyer, a director of defendant society, handled the renting of space to Smith. No rules or regulations were imposed by defendant on Smith as to his employees used in the shooting gallery, their age, experience, responsibility or knowledge of guns and this was left to the discretion of the shooting gallery operator. However, prior to the injury, defendant knew that Nobles was employed in the shooting gallery.

"The guns were not inspected by Mr. Sawyer and there is no evidence that any of defendant agents or employees did so. The fair opened at 9 a.m., but no orders were given to prohibit cleaning of the guns when invitees were on the grounds. All concessionaires were subject to rules and regulations of defendant society as a condition of rental. The only terms of regulations imposed on Smith are evidenced by exhibit 17. The entire control of the rented gallery space was in Smith's hands.

"After the shooting gallery was erected, Sawyer inspected and saw that it was properly erected with steel sides, back and hood. Sawyer made no other inspections of the gallery as he was busy collecting money and seeing that everything ran all right. Sawyer stated he did not interfere with concessionaires.

"As safety measures, defendant maintained a first aid building with a nurse in constant attendance, an ambulance and 2 doctors always available. There were clean rest rooms and pure drinking water. Defendant arranged to have the Saginaw police on duty, 9 during the day and 3 at night. Defendant hired a staff of 15 men from the Pinkerton detective agency; it was their duty to report hazards to the public, injury or sickness or disturbances. They patrolled the midway and were authorized to safeguard the public. No other evidence was presented by defendant as to precautions.

"Exhibits 8 through 14 are pictures inside and outside showing physical aspects of the gallery after the shooting. Any facts, not herein specifically stated, but appearing in the opinions of the court are evidenced by the record. Plaintiff was unable to serve either Smith or Nobles with process.

"Judgments were rendered for plaintiffs by the court sitting without a jury, and judgments duly entered. On motion for new trial, opinions were rendered denying same."

Before this Court the appellant presents 1 question for review which appellee accepts in a revised form:

### Appellant's question
"Was defendant and appellant herein, Saginaw County Agricultural Society, guilty of negligence which was the proximate cause of the plaintiffs' damages?"

### Appellee's question
"Do the facts establish that defendant invitor failed in its duty to plaintiff invitee to use reasonable care in supervision, control and inspection of the shooting gallery being operated on its premises so as to result in 1 of the proximate causes of plaintiff's injury?"

The parties in their briefs and the trial judge in a careful opinion agree upon at least 2 basic propositions. As stated by the appellant, they are:

"The appellant concedes that the law of Michigan requires it to maintain a reasonably safe place for visitors to the fair, and appellant further concedes that in the case of firearms, whether used by appellant's agents or anyone on their fairgrounds that a high degree of care is owed to patrons of the fair to keep the area where firearms are used reasonably safe."

The first of these propositions is quoted thus in *Sullivan* v. *Detroit & Windsor Ferry Co.*, 255 Mich 575, 576, 577:

" " 'The duty assumed by the owners of places to which the public thus resort in large numbers is manifestly analogous to that which the law imposes upon carriers of passengers. Nevertheless it has been measured by the standard of *ordinary care.* Doubtless the true theory is that such persons assume the obligation of exercising reasonable care, and that what will be reasonable care will be a degree of care proportioned to the danger incurred, and to the number of persons who will be subjected to that danger. * * *. Such being the nature of the obligation, it is obvious that the proprietor of such a building is under a *continuing duty of inspection,* to the end of seeing that it is reasonably safe for the protection of those whom he invites to come into it; and that, if he neglects his duty in this respect, so that it becomes unsafe, the question of his *knowledge* or *ignorance* of the defect which renders it unsafe is immaterial.' " 1 Thompson on Negligence (2d ed), § 996, pp 913, 914.

The second is best stated in *Bahel* v. *Manning*, 112 Mich 24, 29, 30 (36 LRA 523, 67 Am St Rep 381):

"The general rule * * * is that a very high degree of care is required from all persons using

firearms in the immediate vicinity of others, no matter how lawful or even necessary such use may be. 7 Am & Eng Enc Law (1st ed), p 523. This same principle is stated in 2 Shearman & Redfield, Negligence (4th ed), § 686. In *Morgan* v. *Cox,* 22 Mo 373 (66 Am Dec 623), it was held that, where injury to another is caused by an act that would have amounted to trespass *vi et armis* under the old system of actions, it is no defense that the act occurred through inadvertence, or without the wrongdoer's intending it; it must appear that the injury done was inevitable, and utterly without fault on the part of the alleged wrongdoer."

With the above disposed of, the dispute on appeal hinges on whether or not there were facts from which the trial judge as trier of the facts could have found negligence on the part of defendant which was a proximate cause of the boy's injury. The contested finding was as follows:

"Here it was known that guns in a shooting gallery were to be used in close proximity to large crowds of people invited there by the defendant, Saginaw County Agricultural Society, whose negligence in not exercising a reasonable degree of continuous supervision, control and inspection of the shooting gallery was the proximate cause of the accident to plaintiffs, who certainly were not guilty of any contributory negligence."

It is apparent from this record that defendant had the power and opportunity to control and regulate its concessionaires. Defendant exercised those rights only to the extent of seeing that steel backs and sides were provided for the booth and that the guns were chained to the counter. Beyond these 2 gestures, it apparently felt it had no duty to go. It provided no rules, made no inspections, exercised no supervision over the employees of the concessionaire. No objection is shown from defendant, though apparent-

ly it knew of the employment of the 15-year-old boy at the range. Do these omissions represent a failure on the part of the defendant to exercise the "very high degree of care" called for in *Bahel, supra?*

Somewhat similar problems have been considered in many cases which are presented by the disputing parties.

There is a temptation here to digress into the fascinating general problems of liability of the employer for the torts of his employee or his independent contractor, and to explore the various tort concepts of "foreseeability," "direct cause," "scope of risk," and "scope of the business." See Prosser, Palsgraf Revisited, 52 Mich L Rev 1; Green, The Duty Problem in Negligence Cases, 28 Columbia L Rev 1014; Talbot Smith, Collateral Negligence, 25 Minn L Rev 399. The problem with doing so is that our current case can throw little light upon solution of these conflicts since on any theory it appears that the weight of authority holds that our current set of facts presents a question of fact for the trial court as to defendant's liability.

Thus Cardozo in *Palsgraf,* while enunciating the doctrine of "foreseeability," noted "some acts such as shooting, are so imminently dangerous to anyone who may come within reach of the missile, however unexpectedly, as to impose a duty of prevision not far from that of an insurer." *Palsgraf* v. *Long Island R. Co.,* 248 NY 339, 344 (162 NE 99, 59 ALR 1253).

And Restatement of Torts states the rule as follows:

"A possessor of land who in the course of his business holds it open to members of the public, is subject to liability for bodily harm caused to them, on a part of the land retained in his possession or upon a part thereof leased to a concessionaire, by his failure to exercise reasonable care to secure the

use of reasonably safe equipment and methods by an * * *

(b) independent contractor or concessionaire employed or permitted to carry on upon the land an activity in furtherance of the possessor's business use thereof." 2 Restatement, Torts, Negligence, ch 15, § 415, p 1122.

Cases abound which illustrate these principles. Of these, so closely in point as to warrant extended quotation, is *Graffam* v. *Saco Grange Patrons of Husbandry, No. 53,* 112 Me 508, 509–511 (92 A 649, 650, LRA 1915C, 632):

"The evidence satisfactorily establishes the proposition that the boy met his death from the accidental discharge of the rifle, but the defendant urges that it should not be held liable for the damages resulting from that death. It says that the evidence does not show that the fairgrounds were hired or the fair conducted by this defendant. A detailed discussion of the testimony upon this point would not be profitable, for this question was submitted to the jury under instructions which we assume were full and correct since the charge of the presiding justice is not reported, and we are not disposed to disturb this feature of the verdict. It further says that it is not liable because all ordinary care was taken to protect the public, so far as a safe target was concerned, and that the accident was caused by the unfortunate manner in which the owner of the rifle attempted to remedy a trouble in the working of the rifle, and against this accidental result it says it was not bound to provide. We do not think this contention can prevail. The defendant says that the case at bar differs from *Thornton* v. *Maine State Agricultural Society,* 97 Me 108 (53 A 979, 94 Am St Rep 488), and while this is partially true yet certain principles of law expounded in that case are applicable to this one. In that case our court said (p 113), 'It is too well settled to need the citation of authorities, that

if the owner or occupier of land either directly or by· implication induces persons to come upon his premises, he thereby assumes an obligation to see that such premises are in a reasonably safe condition, so that the persons there by his invitation may not be injured by them or in their use for the purpose for which the invitation was extended.   *   *   *   It was its (the defendant) duty to use reasonable care that there should be no traps or pitfalls into which the invited might fall, and that there should be no dangerous plays or sports, or exhibitions, by which the invited might be injured.' In the case at bar there is no satisfactory evidence that the defendant took sufficient precautionary measures regarding the protection of the public from the careless handling of a dangerous firearm.   Apparently it let the ground privilege for the shooting gallery and gave the matter no further attention.   It is suggested that on the second day of the fair the target protection was enlarged but it does not appear that even this was the result of careful supervision by the defendant. In *Conradt* v. *Clauve,* 93 Ind 476, 478 (47 Am Rep 388), the court said, 'The practice in target shooting appears to have been a part of the entertainment carried on at the fair, and as the defendants were the owners of the premises, and the managers and controllers of the fair, the practice in target shooting was a part of their exhibition, and under their supervision and control as much as any other part of the fair.   And those having charge of it, while perhaps not strictly agents or servants of the defendants, were acting under the license and permission of the defendants; and such a relation existed between them as will hold the defendants liable for injuries resulting from their negligence in not properly controlling the conduct and management of this part of their exhibition.'   Upon this principle of law, our own court, in *Thornton* v. *Maine State Agricultural Society, supra,* 115, 116, said, 'By inviting patrons to their fair they make themselves bound to use reasonable care to see that the fair in all its parts is

safe and is conducted safely, whether the various parts of the fair are conducted and managed by the owners themselves, or with their permission, by licensees, independent contractors or lessees.' In the case at bar the manner and means used by the owner of the shooting gallery to remedy the defective condition of the rifle seem to us to be clearly careless and negligent. To allow such negligence, or to let grounds to such a careless person, with no careful supervision, oversight or precautionary steps having been taken would seem to clearly fix the liability of the defendant so far as this branch of the case goes."

To the same general effect, and representing, we think, the weight of authority, the following may be cited: *Thornton* v. *Maine State Agricultural Society,* 97 Me 108 (53 A 979, 94 Am St Rep 488); *Tuggle* v. *Anderson,* 43 Wash2d 721 (263 P2d 822); *Szasz* v. *Joyland Company,* 84 Cal App 259 (257 P 871); *Conradt* v. *Clauve,* 93 Ind 476 (47 Am Rep 388).

See, also, annotations, 14 LRA NS 284; 140 ALR 415; 145 ALR 962.

Appellant relies principally upon 3 Michigan cases: *Good* v. *Michigan Farm & Industrial Fair, Inc.,* 270 Mich 543; *Anda* v. *Chicago, Duluth & Georgian Bay Transit Co.,* 231 Mich 567; and *Knottnerus* v. *North Park Street Railway Co.,* 93 Mich 348 (17 LRA 726). The first 2 cases involved merely the use of streets or ways not shown to be inherently dangerous. The third involved the derailing of a roller coaster, which the Court sought (we think not too successfully) to distinguish from the rule previously cited by holding it not a dangerous instrumentality.

Although we have neither found nor been presented with Michigan cases squarely in point, somewhat closer to our fact situation and to the weight of authority are: *Sullivan* v. *Detroit & Windsor Ferry Co., supra; Logan* v. *Agricultural Society of*

*Lenawee County,* 156 Mich 537; and *Blakeley* v. *White Star Line,* 154 Mich 635 (19 LRA NS 772, 129 Am St Rep 496).

The small son of plaintiff in our instant case was plainly a guest invited to the fair by defendant. The duty of reasonable care owed to the boy at defendant's fair must be viewed in relation to the twin circumstances of the regular use of dangerous weapons authorized by defendant and carried on in close proximity to large crowds of people who felt assured against any danger. Thus viewed, the duty owed is plainly that of the high degree of care previously cited from *Bahel, supra.*

We believe that there is ample evidence in this record from which the trial judge could have found that defendant's failure to prescribe any rules for or to exercise any sort of supervision over the operation of the shooting gallery was negligence which was a proximate cause of the boy's injury.

We believe that the holding above accords with perhaps the least debatable definition of legal duty called to our attention during consideration of this case:

"No better general statement can be made, than that the courts will find a duty where, in general, reasonable men would recognize it and agree that it exists." Prosser, Law of Torts (2d ed), ch 6, § 36, p 168.

The judgment of the court below in both cases is affirmed. Costs to appellees.

DETHMERS, C. J., and SHARPE, SMITH, VOELKER, KELLY, CARR, and BLACK, JJ., concurred.