MERRITT v NICKELSON

Docket No. 60940. Argued December 6, 1978 (Calendar No. 13).—
Decided February 1, 1980.

Frances Merritt brought an action for the wrongful death of her
husband, Alan W. Merritt, who was killed when the flywheel of
a race car exploded while he was watching a race at a drag
strip, against the driver of the race car, Howard E. Nickelson,
and the owners as tenants in common of the land where the
drag strip was located, James Ledford and his mother, Marie
Ledford. The claim against defendant Nickelson was settled
before trial. The Manistee Circuit Court, Charles A. Wickens,
J., granted judgment for the plaintiff. Defendant Marie Led-
ford, on appeal, argued that her son, James Ledford, was the
sole owner and operator of the drag strip business and that
there was no basis upon which her son's negligence in operat-
ing the drag strip could be imputed to her. The Court of
Appeals, R. M. Maher, P.J., and M. F. Cavanagh and N. J.
Kaufman, JJ., reversed the judgment against Marie Ledford on
the ground that mere co-ownership in land, without a showing
of possession or control, was an insufficient basis upon which to
impose liability for a defective condition on the premises, and
remanded for an offer of proof by the plaintiff on Marie
Ledford's status, with a limited reopening of the trial on the
issue of liability if indicated by the offer of proof (Docket No.

REFERENCES FOR POINTS IN HEADNOTES

[1] 62 Am Jur 2d, Premises Liability § 186 et seq.
Liability of owner or operator of drive-in restaurant for injury or
death to patron. 45 ALR3d 1428.
[2] 62 Am Jur 2d, Premises Liability § 250 et seq.
[3, 4, 5, 9] 62 Am Jur 2d, Premises Liability § 12 et seq.
Landlord's liability to business patron injured as a result of defec-
tive condition of premises. 17 ALR3d 422.
[6, 11] 62 Am Jur 2d, Premises Liability § 16.
[7] 20 Am Jur 2d, Cotenancy and Joint Ownership §§ 31, 84.
[8] 22 Am Jur 2d, Damages § 2.
1 Am Jur 2d, Actions § 58 et seq.
[10] 20 Am Jur 2d, Cotenancy and Joint Ownership § 22 et seq.
62 Am Jur 2d, Premises Liability § 16.

77-1034). Plaintiff appeals. In an opinion by Justice Kavanagh, joined by Chief Justice Coleman and Justices Levin, Fitzgerald, and Ryan, the Supreme Court *held:*

1. As a business invitee on the property, Alan Merritt had the right to expect that the premises would be maintained and the business conducted in a reasonably safe manner. The duty of care was owed to him both by the invitor who solicited his business and by the possessors of the premises. Invitors are liable for dangerous conditions of property which are known and which might be discovered with reasonable care, regardless of whether they have legal title or control over the premises. However, from this record it does not appear that Marie Ledford was an invitor. James Ledford, as the sole operator of the business, expected to derive an economic benefit from the public's presence, and he alone impliedly warranted the safe condition of the premises in his invitation.

2. The plaintiff argues that Marie is jointly liable for her son's negligent acts because she was the co-owner of the property on which he conducted his business. Michigan has consistently applied the principle that liability for defective premises is conditioned upon both possession and control of the land because the person in possession and control is normally best able to prevent any harm to others. Ownership alone is not dispositive. Possession and control are certainly incidents of title ownership, but possessory rights can be transferred to another party, thereby conferring on him the duty to make the premises safe. In no case cited by the plaintiff did the owner of the property give up control of the premises.

3. When one co-owner of land cedes possession and control of it to the other owners, the law looks to those co-owners actually in control for liability for injuries to third persons. The mere fact that Marie Ledford was a tenant in common with her son did not place her in possession of the land with the intent of controlling it. As a tenant in common, she was entitled to enter upon every part of the land, and to occupy and enjoy the whole; but it does not appear here that she chose to do so. Her freehold was separate and distinct from that of her son. His occupancy of the land was under his own right. He was not her agent by the mere fact of their joint ownership, nor were the acts performed by him transformed into a joint venture. The record in this case does not establish that Marie Ledford exercised her right to possession and control over the property.

4. There is nothing in this case to warrant a new trial. However, the plaintiff may have believed that she need only show that Marie Ledford was a co-owner of the property, and

may be able to present evidence of some degree of possession and control of the drag strip by Marie Ledford. Therefore, the cause is remanded to the trial court to permit an offer of proof by the plaintiff on this issue.

Affirmed.

Justice Moody, joined by Justice Williams, concurred in the result but wrote separately concerning the applicable principles of the law of real property and certain elements which should be considered on remand:

1. Tenancy in common, as distinguished from other types of concurrent ownership such as joint tenancy or tenancy by the entireties, is a kind of co-ownership whereby each of the cotenants has a separate and distinct interest in property, but the right of possession is common to all the cotenants. Each cotenant is entitled to possession of the whole property, subject to the same right in the other cotenants. Because of the relative frequency of exclusive possession by one tenant in common, courts have been called upon to fashion remedies when the other tenants in common are aggrieved by the exclusive possession. An action in ejectment will lie when there is exclusive, adverse, and hostile possession, and the court may order partition of the property, but the result differs when the exclusive possession is by consent or acquiescence. Mere ownership of property is an insufficient basis for an award of damages in favor of one tenant in common for the exclusive possession and operation of a business on the common property by a cotenant. There must be some participation by the aggrieved cotenant in the venture on jointly held property before damages will be awarded.

2. These principles have a bearing, at least by analogy, in this case. If fundamental fairness dictates that a tenant in common who has exclusive possession of common property by the consent or acquiescence of his cotenants should retain all the profits from a venture on the property, fundamental fairness should also dictate that the tenant in exclusive possession be responsible for any liabilities which result from the activities on the property. A different result would pertain if the nonpossessory cotenant actually participated in the venture. Whether this involvement or participation occurred through ownership of stock, subsidy of the venture, or actual management, the cotenant would have a basis to participate in the profits and, likewise, would be liable both to his cotenant and to third parties for tortious activity that resulted from the venture. Thus, it is the relationship between the tenants in com-

mon which dictates whether they will share in the advantages and liabilities of their ventures.

3. From the facts developed at trial in this case, it would be arguable that the defendant Marie Ledford should bear no liability for the death that occurred, because she had no "control" over the day-to-day operation of the drag strip, but control is not the exclusive governing principle. Liability is predicated not only upon the tort concept of control but also on the property concept of involvement, of participation in the venture. Even from the scant factual development there appears to be evidence that might be considered by a jury to find her liable. For instance, the jury might consider that Marie Ledford, by selling James Ledford an undivided one-half interest in a 25-acre parcel of land for $500, in effect subsidized the creation of the drag strip. If it were determined that she was a participant in the establishment of the drag strip, her liability would follow. The major problem with the case is the lack of information on which to base a firm conclusion concerning Marie Ledford's participation in the drag-strip operation. Therefore, the matter should be remanded to the trial court to allow the plaintiff the opportunity not only to present evidence of Marie Ledford's control over the operation of the drag strip but also to present evidence of her involvement and participation, as co-owner of the real estate, in the establishment and operation of the drag strip.

80 Mich App 663; 264 NW2d 89 (1978) affirmed.

### Opinion of the Court

1. Negligence — Business Invitees.

   A business invitee has a right to expect that the premises will be maintained and the business conducted in a reasonably safe manner.

2. Negligence — Possessors of Land — Business Invitees.

   An invitor who solicited a plaintiff's presence on land is liable for dangerous conditions of the property which are known or which might be discovered with reasonable care, regardless of whether he has legal title or control over the premises.

3. Negligence — Possessors of Land — Business Invitees.

   Liability for the dangerous conditions of property is conditioned upon both possession and control of the land because the person in possession and control is normally best able to prevent any harm to others; ownership alone is not dispositive.

4. TENANCY IN COMMON — NEGLIGENCE — POSSESSORS OF LAND —
    BUSINESS INVITEES.

The mere fact that a defendant was a tenant in common with a
codefendant who owned and operated a business on their land
did not place the defendant in possession of the land with the
intent of controlling it so as to impose liability to business
invitees for dangerous conditions where it does not appear from
the record that the defendant chose to enter upon the land and
to occupy it; the codefendant's occupancy was under his own
right, he was not the defendant's agent by the mere fact of
their tenancy in common, nor were the negligent acts per-
formed by him in operating the business transformed into a
joint venture with the defendant.

5. TENANCY IN COMMON — NEGLIGENCE — POSSESSORS OF LAND —
    BUSINESS INVITEES.

Those co-owners of land who are actually in control are liable for
injuries to third persons caused by dangerous conditions of the
property where one co-owner cedes possession and control of
the premises to other co-owners.

OPINION CONCURRING IN RESULT BY BLAIR MOODY, JR., J.

6. TENANCY IN COMMON — POSSESSORS OF LAND — WORDS AND
    PHRASES.

*A tenancy in common is a kind of co-ownership whereby each of
the cotenants has a separate and distinct interest in the prop-
erty, but the right of possession is common to all the cotenants;
each cotenant is entitled to possession of the whole property,
subject to the same right in the other cotenants.*

7. TENANCY IN COMMON — POSSESSORS OF LAND — EJECTMENT —
    PARTITION.

*An action in ejectment will lie where there is exclusive, adverse,
and hostile possession of one tenant in common against a
cotenant, and the court may order partition of the property;
the result differs where the exclusive possession of one cotenant
is by consent or acquiescence of the others.*

8. TENANCY IN COMMON — POSSESSORS OF LAND — ACTION FOR
    DAMAGES.

*Mere ownership of property is an insufficient basis for an award
of damages in favor of one tenant in common for the exclusive
possession and operation of a business on the common property
by another cotenant; there must be some participation by the
aggrieved cotenant in the venture on jointly held property
before damages will be awarded.*

9. TENANCY IN COMMON — POSSESSORS OF LAND — PROFITS — LIABIL-
ITY FOR DAMAGES.

*If fundamental fairness dictates that a tenant in common who has exclusive possession of common property by the consent or acquiescence of his cotenants should retain all the profits from a venture on the property, fundamental fairness should also dictate that the tenant in exclusive possession be responsible for any liabilities which result from his activities on the property.*

10. TENANCY IN COMMON — POSSESSORS OF LAND — JOINT VENTURE
— LIABILITY FOR DAMAGES.

*A tenant in common of land who is not in possession of the land but who actually participated in a venture on the land with a cotenant who is in possession of it would be liable to his cotenant and to third parties for tortious activity that resulted from the venture; it is the relationship between the tenants in common, e.g., involvement or participation through ownership of stock, subsidy, or actual management of the venture, which dictates whether they will share in the advantages and liabilities of their ventures.*

11. TENANCY IN COMMON — NEGLIGENCE — POSSESSORS OF LAND —
BUSINESS INVITEES.

*Control of the day-to-day operation of a business on real property is not the exclusive governing principle for imposing liability for injuries to a business invitee upon a defendant who was a tenant in common of the land with the owner of the business; possession of the land is determined by involvement or participation in the business venture, not only by control.*

*Donald G. Jennings* for plaintiff.

*Zerafa & Zerafa, P.C.,* for defendant Marie Ledford.

KAVANAGH, J. We granted leave to appeal in this case to determine "whether a co-owner of land on which a drag-strip race track is operated by the other co-owner is responsible for injuries occurring on that land to a spectator of the races". We hold that such co-owner is not, and affirm the Court of Appeals.

Prior to May 6, 1970, defendant Marie Ledford was the sole owner of approximately 25 acres of land. On that day she executed a quitclaim deed to the property to herself and her son, defendant James Ledford, as tenants in common. The consideration recited was $500. For some time James Ledford had been planning to operate a race track on the property.

On the day the race track opened, May 30, 1970, the flywheel on a car driven by defendant Howard Nickelson exploded, throwing steel fragments into the crowd. Plaintiff Alan Merritt, a spectator, was struck and killed by one of the fragments.

Plaintiff, administratrix of Alan Merritt's estate, brought suit for wrongful death against Nickelson and Marie and James Ledford. Nickelson's insurance company settled the claim on his behalf for $8,500 and the cause continued to trial against the Ledfords.

The basis for plaintiff's complaint against the Ledfords was that as owners and operators of the race track, they were negligent in failing to make a safety inspection of the cars and in failing to require that the cars be equipped with a scatter shield for the flywheel, pursuant to the recommendations of the National Hot Rod Association.

The trial court, sitting without a jury, gave judgment for plaintiff against both defendants Ledford for $137,000.

Marie Ledford appealed, arguing that she was not negligent and that there was no basis upon which her son's negligence could be imputed to her. Although she did not testify at trial, the record reveals that James Ledford was the sole owner and proprietor of the business. He testified that his mother neither invested money in the business, participated in its formation or opera-

tion, nor shared in its profits. Plaintiff offered no evidence to contradict this testimony.

The Court of Appeals reversed judgment against Marie Ledford, holding that mere co-ownership in land, without a showing of possession or control, was an insufficient basis upon which to impose liability for the defective condition of the premises. *Merritt v Nickelson,* 80 Mich App 663; 264 NW2d 89 (1978).

As a business invitee on the property, Alan Merritt had the right to expect that the premises would be maintained and the business conducted in a reasonably safe manner. *Quinlivan v Great Atlantic & Pacific Tea Co, Inc,* 395 Mich 244; 235 NW2d 732 (1975); *McIntyre v Pfaudler Vacuum Fermentation Co,* 133 Mich 552; 95 NW 527 (1903). This duty of care was owed to him both by the invitor who solicited his business and by the possessors of the premises. See, *e.g., Bluemer v Saginaw Central Oil & Gas Service, Inc,* 356 Mich 399, 408; 97 NW2d 90 (1959).

Invitors are liable for known dangerous conditions of property and for dangerous conditions which might be discovered with reasonable care, regardless of whether they have legal title or control over the premises. *District of Columbia v Thomas,* 130 US App DC 365, 367; 401 F2d 430, 432 (1968); *Danisan v Cardinal Grocery Stores, Inc,* 155 Cal App 2d 833; 318 P2d 681 (1957). From this record it does not appear that Marie Ledford was an invitor. James Ledford, as sole operator of the business, expected to derive an economic benefit from the public's presence, and he alone impliedly warranted the premises' safe condition in his invitation. Prosser, Torts (4th ed), § 61, pp 386, 388.

Plaintiff asserts, however, that Marie Ledford is jointly liable for her son's negligent acts because

she was the co-owner of the property on which he, the invitor, conducted his business.

We disagree.

Premises liability is conditioned upon the presence of both possession and control over the land. This is so because

"[T]he man in possession is in a position of control, and normally best able to prevent any harm to others." Prosser, *supra,* § 57, p 351.

Michigan has consistently applied this principle in imposing liability for defective premises. *Quinlivan, supra,* 267; *Bluemer, supra,* 408; *Nezworski v Mazanec,* 301 Mich 43, 56; 2 NW2d 912 (1942) (landlord-tenant cases); *Bauer v Saginaw County Agricultural Society,* 349 Mich 616, 623; 84 NW2d 827 (1957) (amusement park/concessionaire case); *Dombrowski v Gorecki,* 291 Mich 678, 681; 289 NW 293 (1939) (tenancy by entireties case).

Our application of this principle is in accordance with the Restatement of Torts. The Restatement imposes liability for injuries occurring to trespassers, licensees, and invitees upon those who are "possessors" of the land. 2 Restatement Torts, 2d, §§ 333-350, pp 183-233. A "possessor" is defined as:

"(a) a person who is in occupation of the land with intent to control it or

"(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

"(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b)." *Id.,* § 328 E, p 170.

Ownership alone is not dispositive. Possession and control are certainly incidents of title owner-

ship, but these possessory rights can be "loaned" to another, thereby conferring the duty to make the premises safe while simultaneously absolving oneself of responsibility. *Quinlivan, supra,* 269.

The mere fact that Marie Ledford was a tenant in common with her son did not place her in occupancy of the land with the intent of controlling it. As a tenant in common, she was entitled to enter upon every part of the land and to occupy and enjoy the whole, *DesRoches v McCrary,* 315 Mich 611; 24 NW2d 511 (1946); it does not appear here that she chose to do so. Her freehold was separate and distinct from that of her son. His occupancy of the land was under his own right, not hers. *Everts v Beach,* 31 Mich 136 (1875). He was not her agent by the mere fact of their joint ownership nor were the acts performed by him transformed into a joint venture. 20 Am Jur 2d, Cotenancy and Joint Ownership, § 2, p 93.

Plaintiff argues that the obligation to keep one's premises reasonably safe for use of business visitors is a liability that an owner may not avoid. She cites fairground and amusement park cases where owners of property were held liable for the negligent acts of concessionaires or third parties whom the owners allowed to use the premises. She asserts:

> "There is no reason to believe that a non-operating co-owner of land should be relieved from liability for the negligent condition and operation carried on by the active co-owner when a non-operating sole owner is not relieved from liability for a condition or activity carried out on the owner's premises by an independent third party."

This misperceives the issue. Again, it is the unity of possession and control that is dispositive.

A "possessor" of property must exercise reasonable care in avoiding harm to others on his property from the negligent acts of third persons *because he is in possession and control of the premises* and in a position to exercise the power of control or expulsion. Prosser, *supra,* § 61, p 395. See, also, 2 Restatement, *supra,* § 344, p 223; § 383, p 287. In no case cited by plaintiff did the owner of the property give up control of the premises.[1]

When one co-owner of land cedes possession and control of the premises to her co-owners, the law is satisfied to look to those co-owners actually in control for liability for injuries to third persons. The record in the present case does not establish that Marie Ledford exercised her right to possession and control over the property. Insofar as James Ledford became the sole "possessor" of the land within the meaning of the Restatement, *supra,* he alone owed a duty of care to the invitees who entered the premises. *Id.,* § 344, p 223; § 341 A, p 209.

We find the Court of Appeals disposition of this case appropriate. Accordingly, we remand this cause to the trial court for the disposition set forth at 80 Mich App 668-669.

Affirmed.

COLEMAN, C.J., and LEVIN, FITZGERALD, and RYAN, JJ., concurred with KAVANAGH, J.

BLAIR MOODY, JR., J. *(concurring in the result).* I concur with the result reached by Justice KAVANAGH. This matter should be remanded to the

---

[1] *Rockwell v Hillcrest Country Club, Inc,* 25 Mich App 276; 181 NW2d 290 (1970); *McCarron v Upper Peninsula Hauling Ass'n,* 13 Mich App 168; 163 NW2d 805 (1968); *Arnold v State,* 163 App Div 253; 148 NYS 479 (1914); *Virginia State Fair Ass'n v Burton,* 182 Va 365; 28 SE2d 716 (1944); *Bauer v Saginaw County Agricultural Society,* 349 Mich 616; 84 NW2d 827 (1957).

trial court to permit plaintiff to present evidence of defendant Marie Ledford's involvement and participation in the establishment and operation of the drag strip. I write separately to delineate certain classic principles of real property law which are applicable to this case and to outline certain essential elements which should be considered on remand.

## I

This case presents a unique, hybrid situation. We are asked to determine the effect of tortious activity upon the relationship of two persons who own property as tenants in common. Any analysis, therefore, must focus on the exact nature of the relationship of those who hold land as tenants in common.

Tenancy in common as distinguished from other types of concurrent ownership, such as joint tenancy or tenancy by the entireties, is a type of co-ownership whereby each of the cotenants has a separate and distinct interest in property; but the right of possession is common to all the cotenants. Unity of possession is the essential dynamic present in all tenancies in common. Unity of possession means that each cotenant is entitled to possession of the whole property and every part thereof, subject to the same right in the other cotenants. Moynihan, Introduction to the Law of Real Property, ch 10, § 4, p 224.

Although it is well recognized that the right of possession of the whole property is vested in each tenant in common, situations often arise where one tenant in common takes possession of the whole or conducts an activity which would preclude possession by the other tenants in common. Such situations may develop because of the con-

sent or acquiescence of the other tenants in common or when one tenant in common claims exclusive possession of the land in a fashion adverse to the interest of the other tenants in common.

Because of the relative frequency of exclusive possession by one tenant in common, courts have been called upon to fashion remedies when the other tenants in common are aggrieved by the exclusive possession. An action in ejectment will lie when there is exclusive, adverse and hostile possession and the court may order partition of the property. *Fenton v Miller,* 116 Mich 45; 74 NW 384 (1898). The result differs when the exclusive possession is by consent or acquiescence.

In *Zwergel v Zwergel,* 224 Mich 31; 194 NW 505 (1923), an action was brought by one cotenant against a second cotenant for rents and profits for the operation of a store on property owned by both cotenants.[1] The facts in *Zwergel* were that plaintiff did not participate in the establishment or operation of the store and that all the stock in trade of the business was owned solely by defendant. Further, defendant occupied the store with the assent of plaintiff. This Court rejected plaintiff's claims for defendant's occupancy and profits, reflecting that if mere ownership were the standard an inequity would result. Plaintiff had neither participated in the establishment nor in the operation of the store and any award to plaintiff would be inappropriate. *Zwergel, supra,* 35.

The converse of the *Zwergel* holding is repre-

---

[1] In *Zwergel,* the cotenants were a brother and sister who held the land as joint tenants with the right of survivorship. Generally speaking, there is a certain risk in comparing fact situations and legal analyses involving joint tenancies with tenancies in common because the legal principles involved may differ. However, it is readily apparent from *Walton v Walton,* 287 Mich 557; 283 NW 687 (1939), that the legal principles enunciated in *Zwergel* are equally applicable to situations involving tenants in common.

sented by *Walton v Walton,* 287 Mich 557; 283 NW 687 (1939). In *Walton,* defendant and plaintiff were formerly husband and wife who jointly owned and operated a business.[2] Subsequent to the divorce, defendant husband had exclusive control of the operation of the business. Upon dissolution of the business, plaintiff brought suit against defendant for an accounting and division of all profits from the business. The *Walton* Court held that defendant must account to his cotenant for her share of the profits. Even though plaintiff was not an active participant in the business, she was entitled to share in the profits because of her interest in the stock in trade of the business. *Walton, supra,* 562.

There is a common thread between the *Zwergel* and *Walton* cases. Mere ownership of property is an insufficient basis for an award of damages in favor of one tenant in common for the exclusive possession and operation of a business on the common property by another cotenant. More is required. There must be some participation by the aggrieved cotenant in the venture on jointly held property before damages will be awarded.

The *Zwergel* and *Walton* holdings also have a bearing, by analogy at least, in the context of the instant case. If fundamental fairness dictates that a tenant in common, as in *Zwergel,* who has exclusive possession of common property by the consent or acquiescence of his cotenants retain all the profits from a venture on the property, fundamental fairness should also dictate that the exclusive possessor be responsible for any and all liabilities which result from the possessor's activities on

---

[2] By statute, in Michigan, a husband and wife who own real estate as joint tenants or as tenants by entireties become tenants in common upon being divorced, unless otherwise provided by the judgment of divorce. MCL 552.102; MSA 25.132.

the property. It would decry logic to allow an exclusive possessor to retain all profits but require his or her cotenants to share in the liabilities.

However, as in *Walton,* a different result would pertain if the non-possessory cotenant actually participated in the venture. Whether this involvement or participation occurred through ownership of stock, subsidy of the venture, or actual management, the cotenant would have a basis to participate in profits and, likewise, would be liable both to his cotenant and to third parties for tortious activity that resulted from the venture. Thus, it is the very relationship between the tenants in common which dictates whether the parties will share in the advantages and liabilities of their ventures.

II

The pertinent facts in the instant case are the following: In early 1970, defendant James Ledford entered into construction contracts for a drag strip race track to be built on a parcel of land then owned solely by defendant Marie Ledford. On May 6, 1970, for the sum of $500, Marie Ledford executed a quitclaim deed for the 25-acre parcel of land upon which the drag strip was built to herself and James Ledford as tenants in common. On May 30, 1970, plaintiff's decedent, a spectator, was fatally injured in an automobile mishap at the drag strip.

At trial, James Ledford testified that he was the sole manager and operator of the drag strip and that Marie Ledford played no part in the management of the track. Marie Ledford did not testify at trial. When judgment was rendered against both defendants, Marie Ledford brought a motion for new trial. In her motion, Marie Ledford pled that she had no involvement whatsoever in the man-

agement and operation of the drag strip and received no profits from its operation.

From this factual backdrop, it would be arguable on one level that defendant Marie Ledford should bear no responsibility and therefore no liability for the death that occurred, because she had no "control" over the day-to-day operation of the drag strip. But as the *Walton* case so vividly demonstrates, control is not the exclusive governing principle. Liability of a tenant in common is not only predicated upon the tort concept of control but is also predicated on the property concept of involvement, of participation in the venture.

Although, admittedly, the factual development of this case as regards defendant Marie Ledford is rather scant, even from these facts there appears to be evidence that might be considered by a jury to find her potentially liable. For instance, the jury might consider that Marie Ledford, by selling James Ledford an undivided one-half interest in a 25-acre parcel of land for $500, in effect subsidized the creation of the drag strip. If it were determined that she was a participant in the establishment of the drag strip, her liability would follow.

The chief problem with this argument and the major problem with the entire case, for that matter, is the lack of factual information on which to base a firm conclusion concerning Marie Ledford's participation in the drag-strip operation. A myriad of questions remain unanswered. For example, we do not know whether Marie Ledford subsidized the establishment of the drag strip by direct capital outlays. Further, we have no information about who paid the property taxes on the parcel of land or, if it were necessary to sell or partition the land to satisfy the judgment in this case, how the profits would have been divided.

## III

Because the instant factual setting presents a true hybrid situation, encompassing tort concepts of control and property concepts of involvement and participation in a venture, this matter should be remanded to the trial court not only to allow plaintiff the opportunity to present evidence of Marie Ledford's control over the operation of the drag strip but also to allow plaintiff to present evidence of her involvement and participation, as a co-owner of the real estate, in the establishment and operation of the drag strip.

WILLIAMS, J., concurred with BLAIR MOODY, JR., J.