*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KATHY B. ALI,

   Plaintiff/Counterdefendant-Appellee,

v

BADER MOHAMED ALI,

   Defendant/Counterplaintiff-Appellant.

UNPUBLISHED
May 12, 2022

No. 356678
Barry Circuit Court
LC No. 2018-000882-CH

Before: GLEICHER, C.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

Following a divorce, a couple's ownership interest in Michigan real property is transformed from a tenancy by the entirety into a tenancy in common. The property can then be partitioned, sold, and the proceeds divided. The division must be equitable but not necessarily equal. The trial court in this case properly considered the equities in partitioning Kathy and Bader Ali's Michigan real property following their divorce in a foreign country. We affirm.

## I. BACKGROUND

Bader and Kathy Ali married in 1987 and thereafter lived in Kuwait. They purchased several properties in Calhoun and Barry Counties and spent summers at their large Michigan lake house. After a lengthy marriage, Bader filed divorce proceedings in Kuwait. The final divorce judgment entered on January 8, 2018, but did not dispose of the parties' interests in the Michigan properties. While the divorce proceedings were pending, Kathy and the couple's two remaining minor children moved to Michigan. They first lived in the couple's large lake house, but later moved into their smaller lakeside home. Kathy rented out the homes while not in residence and sold a vacant parcel with a power of attorney granted by Bader.

Kathy filed the current suit seeking partition of the couple's remaining Michigan real property. She sought to have the proceeds from the sale of the properties divided equally, but also argued that it would be equitable to grant her 100% of the value. Bader filed a countercomplaint seeking a larger share of the sale proceeds because they were purchased and maintained with his separate, personal funds from National Bank of Kuwait (NBK) accounts held solely in his name. Of import, by failing to respond to Bader's pretrial request for admissions, Kathy was deemed to

-1-

have admitted that Bader used his separate accounts to purchase and maintain the properties. Bader also accused Kathy of converting the proceeds from the sale of the vacant parcel for her own use, as well as traveler's checks bearing only Bader's name.

After a bench trial, the trial court ordered the parties' remaining properties sold and the proceeds divided equally. The court reasoned that the questions of who paid for the properties and with what funds were an issue for the divorce case and could not be decided in this partition action. Following the divorce, both parties took actions that benefited the properties, the court found. Kathy made the properties profitable by renting them out. The couple had previously paid caretakers to watch over the properties in their absence and Kathy saved those marital funds when she moved to Michigan full-time. Bader benefitted the properties by continuing to pay utilities from his bank accounts. The court ordered Kathy to provide half of the rental income she earned from the real properties to Bader. However, the court dismissed Bader's conversion counterclaims. As the parties were engaged in an ongoing child support dispute, the court ordered that one third of Bader's share of the sale proceeds be held in trust in Michigan.

Bader now appeals.

## II. PARTITION

We review for clear error a trial court's findings of fact following a bench trial. *Patel v Patel*, 324 Mich App 631, 633; 922 NW2d 647 (2018). "A finding is clearly erroneous where, although there is evidence to support the finding, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been made." *Id.* (quotation marks and citation omitted). We review de novo the court's legal conclusions. *Id.*

In Michigan, married couples hold property as a tenancy by the entirety. See *Tkachik v Mandeville*, 487 Mich 38, 46; 790 NW2d 260 (2010). Upon a divorce, a tenancy by the entirety is converted to a tenancy in common, unless otherwise provided in the divorce decree. MCL 552.102. Tenants in common each possess a distinct and separate title to the property, but have the right to possess and use the entire property, so long as the occupying tenant does not exclude the rights of possession and use held by his or her cotenants. See *Merritt v Nickelson*, 407 Mich 544, 553; 287 NW2d 178 (1980); *Desroches v McCrary*, 315 Mich 611, 615; 24 NW2d 511 (1946); *Fenton v Miller*, 94 Mich 204, 214; 53 NW 957 (1892); *Everts v Beach*, 31 Mich 136, 137 (1875).

If parties holding land as tenants in common want to completely sever their interests from each other, they must file an action for partition. MCL 600.3304. Actions for the partition of land are equitable in nature. MCL 600.3301. The Legislature has provided that to achieve true equity the partition need not be equal.

> (1) When it appears to the court ordering partition that partition cannot be made equally between the parties without prejudice to the rights and interests of some of the parties the court may adjudge that 1 party compensate another in such a way as to equalize the partition according to the equities of the case.

> (2) When partitioning the premises or dividing the money received from a sale of the premises among the parties the court may take into consideration the equities

-2-

of the situation, such as the value of the use of the premises by a party or the benefits which a party has conferred upon the premises. [MCL 600.3336.]

Bader contends that the trial court erred in dividing the sale proceeds equally as "Bader's money alone was used for the purchase and improvement of the Real Property and the Personal Property, as well as to pay for taxes, insurance, and maintenance for the Real Property[.]" Bader calculates that the contributions from his separate assets entitle him to a 75% share of the sale proceeds. He further argues that the trial court should have charged Kathy for her use of the properties following the divorce.

We can quickly dispense of Bader's contention that Kathy owed him compensation for her residence in the large and small lake houses after the couple's divorce. In a tenancy in common, one cotenant occupying property does not owe rent to a nonoccupying cotenant. *Desroches*, 315 Mich at 615; *Zwergel v Zwergel*, 224 Mich 31, 36; 194 NW 505 (1923); *Everts*, 31 Mich at 137-138. Kathy had every right to live in any of the couple's Michigan residences and had no duty to compensate Bader for her stay. And the trial court complied with MCL 554.138 by requiring Kathy to share the rental proceeds she collected from third parties with Bader. *Sullivan v Sullivan*, 300 Mich 640, 644; 2 NW2d 799 (1942).

Bader contends that he is entitled to a larger share of the sale proceeds because his separate funds were used to purchase and improve all the real estate, to build their large lake house, and to pay all utilities, insurance, and taxes. This proposition is legally,[1] but not factually, supported.

The partition in this case was necessitated by a divorce, unlike the cases cited by Bader. The parties were married when the real estate was purchased, the small lake house was remodeled, and the large lake house was built. Both Bader and Kathy invested time and energy into these projects. As a married couple, the parties invaded Bader's separate accounts to accumulate and improve marital property. Until 2018, the taxes, insurance, and utilities were paid for the benefit of the entire family. The funds came from NBK bank accounts held in Bader's name alone, as Kathy admitted by failing to respond to the request for admissions. However, there was significant evidence at trial that the parties commingled their funds during their marriage, including the funds in Bader's separate accounts. Specifically, Bader's mother gave him a salary so he could qualify for government benefits, but then deducted that sum from commissions Kathy earned for her work in her mother-in-law's salon. The payments from his mother were placed in Bader's accounts. When Kathy began her own business, she paid Bader a large monthly salary that was also deposited

---

[1] See *Henkel v Henkel*, 282 Mich 473, 486; 276 NW 522 (1937) ("The court, under its general jurisdiction in partition proceedings, has authority to order an accounting for advances made by one cotenant for the benefit of the common property and for insurance and to compel an accounting as to rents thereof."); *Frenzel v Hayes*, 242 Mich 631, 639; 219 NW 740 (1928) (remanding a case "for the adjustment of accounts" taking into account one party's "use and occupation" of the property and providing "credit" for taxes paid by one party); *Campbell v Campbell*, 21 Mich 438 (1870) (holding that siblings who worked the farm and erected buildings at their own expense were entitled to a greater share than other heirs during partition).

into his account, despite that Bader split his work hours between companies owned by Kathy and his mother.

Ultimately, although this is a partition action, it arises from and is an extension of the parties' Kuwaiti divorce proceedings. The parties were litigating a child support action at the same time. The partition cannot be viewed in a vacuum and the parties cannot be treated like strangers who held property together. The parties were married and they shared their assets. The equitable division of the property must be viewed through this lens. As such, the trial court did not err in dividing the property sale proceeds equally.

## III. CONVERSION

Bader further argues that the trial court erroneously dismissed his conversion claims. However, the court reviewed the evidence and found these claims lacking.

"Under the common law, conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Aroma Wines & Equipment, Inc v Columbian Distrib Servs, Inc*, 497 Mich 337, 346; 871 NW2d 136 (quotation marks and citations omitted). MCL 600.2912a codified the tort of conversion as follows:

> (1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:
>
> (a) Another person's stealing or embezzling property or converting property to the other person's own use.
>
> (b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.
>
> (2) The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.

The evidence was undisputed that Kathy sold a vacant lot with Bader's approval and deposited the proceeds into a joint account. Bader admitted that he instructed his son to tell Kathy to keep his half of the property sale proceeds. Accordingly, Bader relinquished his right to those proceeds and Kathy committed no wrongdoing in withdrawing those funds.

While Kathy did not have the authority to sign the traveler's checks, she deposited those proceeds into a joint account as well. The court noted that Bader could have pressed criminal charges, but declined to do so. The court also apparently took into consideration Kathy's testimony that she used the proceeds from the traveler's checks to provide for the minor children in her custody as Bader had not made any child support payments. We will not interfere with the trial court's findings in this regard.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Amy Ronayne Krause
/s/ Mark T. Boonstra